IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARNER BROS. DISCOVERY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff HomeVestors of America, Inc. is commonly known as the We Buy Ugly Houses® people. As the largest homebuyer in the U.S., HomeVestors has spent decades building a brand and identity associated with helping homeowners with problematic houses using its WE BUY UGLY HOUSES family of trademarks. Millions of Americans are familiar with HomeVestors' brand and WE BUY UGLY HOUSES marks. HomeVestors runs a yearly contest for THE UGLIEST HOUSE OF THE YEAR and owns incontestable trademark registrations for this mark, which it has used since 2007. The yearly contest helps demonstrate how the franchisees of America's number one home buyer renovate the homes they buy and showcases one extreme home makeover as the winner.

Defendant Warner Bros. Discovery, Inc.'s new HGTV show—"Ugliest House In America"—is a home renovation contest and TV show that trades off of HomeVestors' trademarks. By using a confusingly similar name for a similar home renovation contest, Defendant's HGTV show is likely to confuse consumers, is harming HomeVestors' brand, infringing HomeVestors' trademark rights, and creating a false association between HomeVestors and Defendant's HGTV show. Because HGTV refused to respect HomeVestors' trademark rights,

despite repeated requests to do so, HomeVestors hereby files suit to stop Defendant from continuing to confuse the public and harm the HomeVestors brand.

## I.  PARTIES

1. Plaintiff HomeVestors is a domestic corporation with its principal place of business in Dallas, Texas.

2. Defendant Warner Bros. Discovery, Inc. is a Delaware corporation with its headquarters located at 230 Park Avenue South, New York, New York 10003.

## II.  JURISDICTION AND VENUE

3. This is an action for trademark infringement, unfair competition, and trademark dilution arising under 15 U.S.C. §§ 1114, 1125(a), and 1125(c). Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

4. Defendant is subject to personal jurisdiction in this district because Defendant is a Delaware corporation. In addition, Defendant has infringed, contributed to the infringement of, and/or actively induced others to infringe HomeVestors' trademarks in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the claims arose in this district and Defendant resides in this district for purposes of venue under 28 U.S.C. § 1391(c).

## III.  FACTUAL BACKGROUND

### A. HomeVestors Helps Homeowners

6. HomeVestors is the largest homebuyer in the United States. Since its founding in 1996, HomeVestors' network of over 1,100 independently owned and operated franchises has purchased over 125,000 homes throughout the United States. HomeVestors' franchisees, who are

located in this District, 47 other states, and the District of Columbia, build businesses based on buying, rehabbing, selling, and holding residential properties.

7. Known as the We Buy Ugly Houses® people, HomeVestors strives to make a positive impact in each of its over 175 markets. HomeVestors was listed on the 2021 Inc. 5000, and has been listed on the prestigious Franchise Business Review's List of Top Franchises 11 times. HomeVestors has also been regularly recognized by Entrepreneur Magazine, including as a Top Growth Franchise and placed at number 36 on its annual Franchise 500. In 2020, Franchise Times ranked HomeVestors 94th on its Top 200 Franchise Chains by Worldwide Sales. This year, HomeVestors received a Top Overall Franchise Award from FranchiseHelp, the world's largest independent information resource for prospective franchisees.

8. HomeVestors' franchisees often renovate the houses they purchase before selling or renting them to others. Consequently, since at least 2000, HomeVestors has used the mark WE BUY UGLY HOUSES in connection with its franchising and real estate services.

9. Since 2007, HomeVestors has been using the mark THE UGLIEST HOUSE OF THE YEAR in connection with organizing and promoting contests for advertising purposes; promoting the sale of services of others by conducting contests, and in particular, promoting a home renovation contest.

10. HomeVestors' contest for THE UGLIEST HOUSE OF THE YEAR has received widespread recognition through social media and press coverage. For example:

> The Ugliest House of the Year - https://www.orlandomagazine.com/the-ugliest-house-of-the-year/

HomeVestors Names The Ugliest House Of The Year® 2021 -

https://www.businesswire.com/news/home/20220111005866/en/HomeVestors-Names-The-Ugliest-House-Of-The-Year%C2%AE-2021

Meet America's 'Ugliest House of the Year'—and See How Gorgeous It Looks Today -

https://www.mysanantonio.com/realestate/article/Meet-America-s-Ugliest-House-of-the-Year-and-15011194.php

11. HomeVestors' yearly contest for THE UGLIEST HOUSE OF THE YEAR receives significant social media and press, including television news coverage.

12. While millions of Americans are familiar with HomeVestors' WE BUY UGLY HOUSES brand, many do not see the renovation and rehab work that HomeVestors' franchisees put into these houses. HomeVestors' yearly UGLIEST HOUSE OF THE YEAR contest helps bridge that gap.

13. As HomeVestors' CEO David Hicks has previously stated, "[m]any people may not have seen the actual hard work that the 'We Buy Ugly Houses' people do on the houses we buy, dealing with everything from rodent infestations and natural disasters to neglect and vandalism. The Ugliest House of the Year represents the best of the thousands of houses that were [seen as] hopeless by other buyers, but not by HomeVestors franchisees, who see potential and know-how to make it a reality. They don't just buy these houses, but they also labor to make these properties whole again."

14. The 2021 winner of HomeVestors' Ugliest House of the Year contest is one such example. When HomeVestors' franchisee Bernardo Mazzucco purchased the single-story ranch built in 1984, "it had enough junk to fill five dumpsters strewn inside and out accompanied by an

overwhelming smell inside that forced Mazzucco and his crews to rotate to help them endure it."[1] The house was infested with "animals ranging from those with four to six and eight legs" and also had an "overgrown landscape [that] hid creepy finds like buried dolls in the backyard."[2]

15. HomeVestors' franchisee Mazzucco rehabilitated the house and transformed it into a home for a new family. Below are a few before and after photos of the home saved by a HomeVestors' franchisee:





---

[1] https://www.yahoo.com/entertainment/homevestors-names-ugliest-house-2021-155500238.html
[2] *Id.*





16. Importantly, HomeVestors' yearly contest relies on voting by the public. Each contest entrant shows their before and after photos, which helps demonstrate how HomeVestors' franchises help rehab homes in disrepair.

6

17. The following are examples of entrants for HomeVestors' 2022 "Ugliest House of the Year" contest:



**B. HomeVestors' Trademarks Rights**

18. HomeVestors is also the owner of more than thirty United States Trademark Registrations for its UGLY family of marks (collectively, the "UGLY HOUSES Marks") identified on Exhibit A.

19. Among HomeVestors' federally registered UGLY HOUSES Marks are THE UGLIEST HOUSE OF THE YEAR (U.S. Reg. Nos. 5,304,576 and 5,304,577), WE BUY UGLY HOUSES (U.S. Reg. Nos. 2,761,385; 2,999,705; 3,099,814; 5,297,521; 5,560,021; 5,467,581), UGLY'S OK (U.S. Reg. No. 2,794,480), WE BUY THE GOOD, THE BAD AND THE UGLY (U.S. Reg. No. 3,307,918), THE GOOD, THE BAD AND THE UGLY (U.S. Reg. No. 3,350,752), UGLY OPPORTUNITIES (U.S. Reg. No. 4,313,868), UGLY HOUSE? (U.S. Reg. No. 5,172,916), WE BUY HOUSES, UGLY OR NOT (U.S. Reg. No. 5,919,518), and WE BUY

7

HOUSES, THE GOOD, THE BAD AND THE UGLY (U.S. Reg. No. 5,919,520). *See* Certificate of Registrations attached hereto as Exhibit B.

20. As noted above, numerous HomeVestors' registrations for the UGLY HOUSES Marks have become incontestable and constitute conclusive evidence of the validity of the marks, HomeVestors' ownership of the marks, and its exclusive right to use the marks. This includes HomeVestors' registrations for THE UGLIEST HOUSE OF THE YEAR (U.S. Reg. Nos. 5,304,576 and 5,304,577).

21. HomeVestors and its franchisees invest significant amounts of time, money, and energy into promoting HomeVestors' services under the UGLY HOUSES Marks. In just the last 10 years, HomeVestors has spent over $500 million in advertising and promoting the HomeVestors brand using the UGLY HOUSES Marks.

22. Only HomeVestors and its independently owned and operated licensed franchisees have the right to use HomeVestors' UGLY HOUSES Marks.

23. HomeVestors and its franchisees advertise their real estate-related services through print media, billboards, the Internet, social media, and on television and radio.

24. As a result of the extensive advertising and sales, the UGLY HOUSES Marks enjoy significant goodwill among relevant consumers.

25. Due to the longstanding use, extensive advertising, and widespread recognition among the consuming public, HomeVestors' WE BUY UGLY HOUSES mark, as well as HomeVestors' other UGLY HOUSES Marks, have become famous.

C. **Defendant's Wrongful Acts**

26. In June 2020, a representative from Big Fish Entertainment reached out to HomeVestors and stated that they were "working on a development series for HGTV and were on the hunt for homeowners of the ugliest houses in America."

27. At the time, HGTV was casting for a new show, as shown below:[3]

# HGTV Now Casting Ugly-House Homeowners

Announcing nationwide casting for owners of houses that could use some *serious* help. Are you no stranger to crazy reactions when guests walk into your home? We'd like to hear from you. And see your pictures!

Big Fish Entertainment is now casting fun and dynamic "ugly house" homeowners from all over the country who own their house's flaws and are in need of a major home renovation.

28. In June and July of 2020, Big Fish Entertainment communicated with HomeVestors several times about the new HGTV show and opportunities for a mutually beneficial collaboration. But on August 4, 2020, Big Fish Entertainment told HomeVestors that "[b]ecause our initial casting was a development step and things are shifting constantly, we'd like to put this conversation on hold." Big Fish Entertainment then told HomeVestors that "[i]f and when we have a clear direction moving forward we will pick the conversation back up."

---

[3] hgtv.com/shows/be-on-hgtv/hgtv-now-casting-ugly-house-homeowners

29. Then, without further discussion, HGTV launched a new show and home renovation contest with a nearly identical name as HomeVestors' THE UGLIEST HOUSE OF THE YEAR home renovation contest.

30. In 2022, Defendant premiered "Ugliest House in America" on its HGTV network.



31. The show chronicles comedian Marietta Sirleaf, professionally known as Retta, as she "travels across the country to tour properties nominated by their owners as the ugliest homes around."

32. In its advertising and promotion of the show, Defendant emphasizes UGLY and UGLIEST HOUSE.

33. Defendant is also using #UGLIESTHOUSEINAMERICA in its promotions.

34. Below are several examples of Defendant's advertising of its show in which it emphasizes the words UGLIEST HOUSE:





10

35. In 2022, Defendant also ran a contest coinciding with the premiere of the show entitled "HGTV's UGLIEST $5k GIVEAWAY."

36. Similar to the advertising shown above, Defendant chose to once again emphasize the word UGLIEST.



37. Defendant has an economic motivation for publishing each of the advertisements and promotional items referenced above, which is to "sell" its television show to viewers.

38. Given the previous discussions with HomeVestors, Defendant was aware of HomeVestors' UGLY HOUSES Marks before launching its new Ugliest House in America show.

39. Defendant's show does not represent the values of the HomeVestors' brand. Defendant's show focuses on and mocks houses with odd design choices and their owners. Most of the shows are little more than making fun of homes and home design.

40. Defendant's attempt to turn poor housing design into a comedy show reflects poorly on the homeowners and on the concept of home remodeling. This runs counter to HomeVestors' brand image, which focuses on helping rehab homes that have fallen into disrepair and helping homeowners out of "ugly situations."

41. Because consumers are likely to be confused as to the affiliation of the HGTV show with HomeVestors, the show's derision harms the brand reputation that HomeVestors has spent years and hundreds of millions of dollars building. It also tarnishes the famous UGLY HOUSES Marks.

42. HomeVestors contacted Defendant via a letter dated January 19, 2022 to inform Defendant of HomeVestors' concerns about its show. Specifically, HomeVestors told Defendant that it believed the new "Ugliest House in America" show on HGTV "will likely continue to cause confusion in the marketplace as to whether this TV show is related to, affiliated with, or sponsored by HomeVestors."

43. In a response letter dated January 31, 2022 from Defendant's lawyer, Defendant "acknowledge[d] that your client, HomeVestors of America, Inc. ("HomeVestors") owns registrations at the United States Patent and Trademark Office for marks comprised of or consisting of the mark THE UGLIEST HOUSE OF THE YEAR." However, Defendant refused to take any steps to address consumer confusion or its infringement of HomeVestors' UGLY HOUSES Marks

44. HomeVestors wrote Defendant again on February 17, 2022, and again asked Defendant to stop using the confusingly similar UGLIEST HOUSE IN AMERICA mark in connection with its show. Specifically, HomeVestors told Defendant that its new show is a contest, "which is much closer to the services listed in the registration for HomeVestors' [THE UGLIEST HOUSE OF THE YEAR] mark." HomeVestors also told Defendant that the name of its show is "highly similar" to HomeVestors' yearly contest and registered trademarks. Further, HomeVestors told Defendant that "[g]iven the substantial similarly between the marks, we expect HomeVestors to suffer significant confusion in the marketplace if [Defendant's] use of the 'Ugliest House in America' mark continues, particularly if no remedial measures are taken."

45. Following receipt of HomeVestors' letters in January and February 2022, Defendant took no steps whatsoever to avoid damaging the HomeVestors' brand or to prevent consumer confusion. Instead, Defendant renewed the show for another season.

46. Due to Defendant's continued use of a confusingly similar mark, a Google search for UGLIEST HOUSE OF THE YEAR returns search results for Defendant's HGTV show "Ugliest House in America" near the top of the results.

47. A Google search for UGLIEST HOUSE (the dominant part of HomeVestors' mark and contest name) almost exclusively returns search results for Defendant's show.

48. Defendant is not affiliated with HomeVestors and does not have a license to use any of HomeVestors' UGLY HOUSES Marks. Defendant also does not have a license to use HomeVestors' THE UGLIEST HOUSE OF THE YEAR marks.

49. Defendant has not attempted to register the mark UGLIEST HOUSE IN AMERICA with the U.S. Patent and Trademark Office for its television show.

50. Defendant's show relies heavily on use of the words UGLY and UGLIEST in connection with HOUSE and HOUSES, even though there are many synonyms for both words that Defendant could have chosen to use.

51. Defendant could have used a different name for the show that did not use the words UGLIEST HOUSE.

52. Defendant has used and continues to use HomeVestors' UGLY HOUSES Marks or similar variations to advertise its home renovation television show.

53. Defendant makes no effort to distinguish its show from the HomeVestors' UGLY HOUSES Marks through disclaimers or other distinguishing elements, even after being notified by HomeVestors that its use of nearly identical trademarks was likely to confuse consumers and harm the HomeVestors brand.

54. Thus, Defendant intentionally and explicitly misleads consumers as to the source and affiliation of HGTV's "Ugliest House In America" show.

## IV. CLAIMS FOR RELIEF

**A. COUNT I: Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114**

55. HomeVestors realleges and incorporates by reference the allegations set forth in all proceeding paragraphs.

56. HomeVestors is the owner of valid and subsisting U.S. registrations for the UGLY HOUSES Marks identified above.

57. Defendant's wrongful and unauthorized use in commerce of the UGLY HOUSES Marks to promote, market, and advertise their home renovation television show contest constitutes trademark infringement under 15 U.S.C. § 1114, as it is likely to cause confusion, mistake or deception.

58. Defendant's intentional and willful infringement of the UGLY HOUSES Marks has caused, and will continue to cause, damage to HomeVestors, and is causing irreparable harm to HomeVestors for which there is no adequate remedy at law. Therefore, HomeVestors is entitled to injunctive relief against Defendant.

59. HomeVestors is entitled to recover Defendant's profits, its actual damages, and the costs of this action. HomeVestors is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendant's willful conduct.

**B. COUNT II: Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125**

60. HomeVestors realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

61. HomeVestors is the owner of valid U.S. registrations for the UGLY HOUSES Marks identified above.

62. The UGLY HOUSES Marks are distinctive marks that are associated with HomeVestors and exclusively identify HomeVestors' business and services.

63. Defendant has used, and continues to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof and/or false descriptions of origin that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with HomeVestors and/or as to the origin, sponsorship, or approval of the services and products and commercial activities of Defendant, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the UGLY HOUSES Marks, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

64. The actions of Defendant described above have, at all times relevant to this action, been willful and intentional.

65. As a result of Defendant's actions, HomeVestors has been damaged and will continue to be damaged. HomeVestors is entitled to recover Defendant's profits, its actual damages, and the costs of this action. HomeVestors is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendant's willful conduct.

**C. COUNT III: Dilution under the Lanham Act, 15 U.S.C. § 1125**

66. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

67. Based at least on the distinctiveness of the UGLY HOUSES Marks; the duration and extent of advertising featuring the UGLY HOUSES Marks; the geographic area in which HomeVestors franchisees advertise their real estate–related services under the UGLY HOUSES Marks; the nature of the trade channels used to market such real estate–related services under the

UGLY HOUSES Marks compared to the trade channels through which Defendant markets, intends to market, or is likely to market its services; the degree of public recognition of the UGLY HOUSES Marks; and HomeVestors' numerous federal registrations for the UGLY HOUSES Marks, the UGLY HOUSES Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and have been famous for years.

68. Defendant's actions described above, all occurring after the UGLY HOUSES Marks became famous, are likely to cause dilution of the famous UGLY HOUSES Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C.A. § 1125(c).

69. HomeVestors has sustained damage as a direct and proximate result of Defendant's dilution in an amount to be proven at trial.

**D. COUNT IV: Injury to business reputation; dilution under 6 DE Code § 3313**

70. HomeVestors realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

71. HomeVestors is the owner of all common law rights in Delaware for the UGLY HOUSES Marks identified above.

72. The UGLY HOUSES Marks are distinctive marks that are associated with HomeVestors and exclusively identify HomeVestors' business and services.

73. The UGLY HOUSES Marks have been used in Delaware since at least 2005.

74. Defendant has used, and continues to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof and/or false descriptions of origin that are likely to cause injury to the business reputation of HomeVestors and/or to dilute the distinctive quality of the UGLY HOUSES Marks, in violation of 6 DE Code § 3313.

75. As a result of Defendant's actions, HomeVestors has been damaged and will continue to be damaged unless Defendants are enjoined.

## PRAYER FOR RELIEF

WHEREFORE, HomeVestors respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief against Defendant, including, but not limited to:

(1) Actual, treble, and exemplary damages;

(2) In accordance with 15 U.S.C. § 1116, issue a permanent injunction enjoining Defendant and Defendant's officers, agents, servants, employees, affiliates, contractors, and attorneys, and all persons in active concert or participation with Defendant from the acts described in this Complaint;

(3) In accordance with 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendant's profits from the aforesaid acts of trademark infringement and unfair competition;

(4) In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in HomeVestors' favor and award HomeVestors its reasonable attorney's fees, costs, and expenses of this action;

(5) In accordance with 6 DE Code § 3313, grant HomeVestors an injunction to enjoin Defendant from the acts described in this Complaint;

(6) Award HomeVestors its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

(7) Grant HomeVestors such other relief, at law or in equity, to which it is justly entitled.

OF COUNSEL:

HOLLAND & KNIGHT LLP
Justin S. Cohen
Justin.Cohen@hklaw.com
Dina W. McKenney
Dina.McKenney@hklaw.com
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201
214-969-1700

Tracy Zurzolo Quinn
Tracy.Quinn@hklaw.com
2929 Arch Street, Suite 800
Philadelphia, PA 19104
215-252-9522

Dated: December 12, 2022

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*HomeVestors of America, Inc.*