IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1583 (RGA) |
| | ) | |
| WARNER BROS. DISCOVERY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WARNER BROS. DISCOVERY, INC.'S**
**OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
OF COUNSEL:                              Wilmington, DE  19899
                                         (302) 658-9200
Aaron J. Moss                            mflynn@morrisnichols.com
Joshua Geller                            jying@morrisnichols.com
GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
2049 Century Park East                   *Attorneys for Defendant*
Suite 2600                               *Warner Bros. Discovery, Inc.*
Los Angeles, CA  90067
(310) 553-3610

February 17, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF RELEVANT FACTS ...................................................................... 3

ARGUMENT ............................................................................................................... 3

I.   WBD's USE OF THE TITLE "UGLIEST HOUSE IN AMERICA" IS
     PROTECTED BY THE FIRST AMENDMENT ................................................... 4

  A.   *Rogers v. Grimaldi* Precludes HomeVestors' Infringement Claims
       Arising from the Program's Title............................................................... 4

    1.   *Rogers* bars trademark claims so long as the use of the mark
         has some artistic relevance to the work and is not explicitly misleading..... 5

    2.   The *Rogers* Test is universally applied, including in this Circuit.................. 6

    3.   WBD's First Amendment defense under *Rogers* may be decided
         on a Rule 12(b)(6) Motion.................................................................... 8

  B.   WBD's Use of the Title "*Ugliest House in America*" is Artistically Relevant
       to its Television Series. ....................................................................... 8

  C.   WBD's Use of the Title "Ugliest House" Does Not Explicitly Mislead as
       to the Source of the Television Series.................................................. 10

II.  HOMEVESTORS' TRADEMARK CLAIMS ARE ALSO BARRED BY
     THE FAIR USE DOCTRINE. ........................................................................ 12

  A.   WBD Used the Term "Ugliest House" Merely to Describe its Program
       and not in a Trademark Sense. .......................................................... 14

  B.   WBD Used the Term "Ugliest House" in Good Faith.......................... 15

III. HOMEVESTORS' DILUTION CLAIMS ARE ALSO BARRED BY THE
     FIRST AMENDMENT AND THE FAIR USE DOCTRINE........................... 17

CONCLUSION......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................4

*Belin v. Starz Ent., LLC*,
2022 WL 2192999 (C.D. Cal. June 17, 2022) ..........................................................8

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .................................................................................12

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011)....................................................................................................4

*Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*,
70 F.3d 267 (2d Cir. 1995)........................................................................................14

*Castro v. Entrepreneur Media, Inc.*,
2011 WL 13234330 (W.D. Tex. Apr. 28, 2011)........................................................14

*Clinical Nutrition Centers, Inc. v. Mayo Found. for Med. Educ. & Rsch.*,
135 F. Supp. 3d 1267 (N.D. Ga. 2013) .....................................................................13

*Cohen v. California*,
403 U.S. 15 (1971)......................................................................................................5

*Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997)........................................................................................16

*Dillinger, LLC v. Elec. Arts Inc.*,
2011 WL 2457678 (S.D. Ind. June 16, 2011)........................................................9, 11

*E.S. Originals, Inc. v. Stride Rite Corp.*,
656 F. Supp. 484 (S.D.N.Y 1987) ............................................................................16

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ...................................................................................9

*ETW Corp. v. Jireh Pub., Inc.*,
332 F.3d 915 (6th Cir. 2003) ................................................................................6, 12

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008)......................................................................................7

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014)............................11

*Hart v. Elec. Arts, Inc.*,
  717 F.3d 141 (3d Cir. 2013)...............................................................................................7

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ............................................................................................13

*Hidden City Philadelphia v. ABC, Inc.*,
  2019 WL 1003637 (E.D. Pa. 2019) .......................................................................8, 9, 10, 17

*Institute for Scientific Info. v. Gordon and Breach, Science Publishers*,
  931 F.2d 1002 (3d Cir. 1991).............................................................................................14

*Int'l Stamp Art, Inc. v. U.S. Postal Serv.*,
  456 F.3d 1270 (11th Cir. 2006) .........................................................................................16

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012)................................................................................................4

*Joseph Burstyn, Inc. v. Wilson*,
  342 U.S. 495 (1952)..........................................................................................................17

*Kassa v. Detroit Metro Convention & Visitors Bureau*,
  150 F. Supp. 3d 831 (E.D. Mich. 2015), *aff'd*, 672 F. App'x 575 (6th Cir.
  2017) ..............................................................................................................................13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004)..........................................................................................................13

*Lang v. Ret. Living Pub. Co.*,
  949 F.2d 576 (2d Cir. 1991)...............................................................................................16

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  156 F. Supp. 3d 425 (S.D.N.Y.), *aff'd*, 674 F. App'x 16 (2d Cir. 2016)................................18

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012)..................................................................................18

*Lupian v. Joseph Cory Holdings LLC*,
  905 F.3d 127 (3d Cir. 2018)................................................................................................4

*Mattel, Inc. v. MCA Recs., Inc.*,
  296 F.3d 894 (9th Cir. 2002) ....................................................................................6, 11, 15

*McZeal v. Amazon Servs., LLC*,
  2021 WL 5213099 (C.D. Cal. Nov. 8, 2021)........................................................................13

*Medina v. Dash Films, Inc.*,
   2016 WL 3906714 (S.D.N.Y. July 14, 2016) ........................................................15

*MGFB Props., Inc. v. Viacom Inc.*,
   54 F.4th 670 (11th Cir. 2022) .................................................................9, 10, 12

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ...........................................................................13

*Parks v. LaFace Recs.*,
   329 F.3d 437 (6th Cir. 2003) ............................................................................10

*Raymen v. United Senior Ass'n*,
   409 F. Supp. 2d 15 (D.D.C. 2006) ....................................................................17

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)..................................................................... *passim*

*Schad v. Borough of Mount Ephraim*,
   452 U.S. 61 (1981).............................................................................................4

*Seale v. Gramercy Pictures*,
   949 F. Supp. 331 (E.D. Pa. 1996) ......................................................................7

*Smith v. Ames Dep't Stores, Inc.*,
   988 F. Supp. 827 (D.N.J. 1997), *aff'd*, 172 F.3d 860 (3d Cir. 1998).....................13

*Sorensen v. WD-40 Co.*,
   792 F.3d 712 (7th Cir. 2015) ............................................................................16

*Soweco, Inc. v. Shell Oil Co.*,
   617 F.2d 1178 (5th Cir. 1980) ..........................................................................13

*Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*,
   2022 WL 605724 (D. Del. Jan. 25, 2022)...........................................................18

*Tacynec v. City of Philadelphia*,
   687 F.2d 793 (3d Cir. 1982).................................................................................4

*Thoroughbred Legends, LLC v. Walt Disney Co.*,
   2008 WL 616253 (N.D.G.A. Feb. 12, 2008) ..................................................16, 17

*Twentieth Century Fox v. Empire Distribution, Inc.*,
   875 F.3d 1192 (9th Cir. 2017) ........................................................................9, 10

*UFO Mag., Inc. v. Showtime Network, Inc.*,
   2022 WL 16645041 (D. Wyo. July 21, 2022) ........................................................8

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) .................................................................7

*W.W.W. Pharm. Co. v. Gillette Co.*,
    984 F.2d 567 (2d.Cir.1993).....................................................................16

*Westchester Media v. PRL USA Holdings, Inc.*,
    214 F.3d 658 (5th Cir. 2000) ....................................................................6

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) .........................................................18

## Rules and Statutes

6 Del. C. § 3313 ....................................................................................1, 18

15 U.S.C. § 1114 ........................................................................................1

15 U.S.C. § 1115(b)(4) .............................................................................14

15 U.S.C. § 1125(a) ....................................................................................1

15 U.S.C. § 1125(c) ...............................................................................1, 17

15 U.S.C. § 1125(c)(3)(C) ........................................................................17

Fed. R. Civ. P. 12(b)(6)..................................................................1, 3, 4, 8

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff HomeVestors of America, Inc. ("HomeVestors") commenced this action against Warner Bros. Discovery ("WBD") through a complaint filed on December 12, 2022 (D.I. 1, the "Complaint").  The Complaint asserts claims for (I) trademark infringement under the Lanham Act (15 U.S.C. § 1114); (II) unfair competition and false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)); (III) trademark dilution under the Lanham Act (15 U.S.C. § 1125(c)); and (IV) injury to business reputation and dilution under 6 Del. C. § 3313.  HomeVestors alleges that WBD's television series, *Ugliest House in America*, infringes HomeVestors' trademark rights in "The Ugliest House of the Year" as used in an annual promotional contest for HomeVestors' real estate services.

WBD now moves to dismiss the Complaint, in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.  This is WBD's opening brief in support of its motion.

## SUMMARY OF ARGUMENT

WBD distributes a television series that features "ugly" homes across America.  The program, which airs on the HGTV network, tours different regions of the country in search of the "ugliest" house, which is then renovated at the conclusion of the season.  Not surprisingly, the series is called *Ugliest House in America*.

HomeVestors is a franchised homebuyer operating under the moniker "We Buy Ugly Houses."  It runs an annual promotional contest to identify "The Ugliest House of the Year" from among the many houses HomeVestors' franchisees purchased that year.  Based on its use of the trademarked phrase "The Ugliest House of the Year" in connection with this promotional contest, HomeVestors now seeks to enjoin the distribution of WBD's television series.

HomeVestors' claims all fail as a matter of law for two separate and independent reasons.

First, WBD's use of the term "ugliest house" in connection with an expressive work—its television series—is fully protected by the First Amendment.  The First Amendment restricts trademark claims arising from titles of expressive works such as books, television programs and films.  Courts around the country have uniformly rejected trademark and related claims asserted against the titles of expressive works so long as the title has at least some *minimal artistic relevance* to the underlying work and does not *explicitly mislead* as to the source of the work.  Here, there is no dispute that the title "Ugliest House in America" is manifestly relevant to the subject of the HGTV program, and HomeVestors does not (and cannot) plausibly allege that WBD explicitly misleads the public as to the source of the program.

Second, the "fair use" doctrine provides a separate defense to HomeVestors' claims as a matter of law.  WBD's title uses the common English phrase "ugliest house" not as a trademark to designate the source of its television program, but solely as an accurate, good faith description of the content of that program.  The law forbids a trademark registrant such as HomeVestors from appropriating a descriptive term for its exclusive benefit, thereby preventing others from accurately describing a characteristic of their goods.

HomeVestors' Complaint is a textbook example of trademark overreach that is ripe for resolution on a motion to dismiss.  Regardless of whether there is any consumer confusion (the *sine qua non* of trademark infringement), HomeVestors' claims fail as a matter of law based on the First Amendment and the doctrine of fair use.  Nothing that HomeVestors may produce or obtain in discovery could change the fact that WBD is legally permitted to distribute a television program about ugly houses across America using a title that accurately describes the content of the program.  HomeVestors' claims should therefore be dismissed without leave to amend.

## STATEMENT OF RELEVANT FACTS

HomeVestors' franchisees purchase, rehab, hold and sell residential properties. Complaint ("Compl."), ¶¶ 2, 6, 9.  HomeVestors registered the trademark "We Buy Ugly Houses" and other related trademarks in connection with its business.  Compl., ¶ 19.  In 2007, it began using the mark "The Ugliest House of the Year" to market an annual promotional contest used to sell real estate services.  Compl., ¶¶ 9, 19.

HomeVestors alleges that in June 2020, HGTV began casting for a new program "for owners of houses that could use some *serious* help."  Compl., ¶ 27.  HomeVestors alleges that a representative from "Big Fish Entertainment" communicated with HomeVestors about the new HGTV program and "opportunities for a mutually beneficial collaboration." Compl., ¶ 28.  In August 2020, Big Fish Entertainment purportedly put the conversation "on hold."  Compl., ¶ 28.

In 2022, the television series *Ugliest House in America* premiered on WBD's HGTV network.  Compl., ¶ 30.  The premise of the program is simple: homeowners nominate their houses as "ugly" and host Marietta Sirleaf, known as Retta, travels the country to determine which is the "ugliest" house.  Compl., ¶ 31.  The winner receives a home renovation.  Compl., ¶ 29.

The Complaint alleges that *Ugliest House in America* infringes HomeVestors' trademark rights in "The Ugliest House of the Year" by misleading consumers as to the source and affiliation of WBD's program, and that the program is also likely to cause dilution of HomeVestors' trademarks.  Compl., ¶¶ 54, 68.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), HomeVestors' Complaint must contain sufficient factual matter to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the Court must "accept as true all factual assertions, but [] disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678–79).

A complaint may be dismissed under Rule 12(b)(6) where an affirmative defense is "apparent on the face of the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018).  HomeVestors asserts three claims for relief under the Lanham Act and one claim under Delaware trademark law.  Each claim fails based on two independent affirmative defenses, each apparent from the face of the Complaint.  First, WBD's use of the term "ugliest house" in connection with an expressive work (its television series) is protected by the First Amendment.  Second, WBD's use of the term "ugliest house" as a bona fide description of its own work is fair use.  Neither defense requires any further development of the record— HomeVestors cannot state legally viable trademark claims over the use of a descriptive phrase like "ugliest house" as applied to a television series about ugly houses.

## I.   WBD'S USE OF THE TITLE "UGLIEST HOUSE IN AMERICA" IS PROTECTED BY THE FIRST AMENDMENT

### A.   *Rogers v. Grimaldi* Precludes HomeVestors' Infringement Claims Arising from the Program's Title.

WBD's television series *Ugliest House in America* is an expressive work entitled to protection under the First Amendment.  *Tacynec v. City of Philadelphia*, 687 F.2d 793, 796 (3d Cir. 1982) (works of entertainment, including television programs, fall within the First Amendment guarantee) (citing *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981)); *see also Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011) (First Amendment protects works of media and entertainment).  As such, HomeVestors' effort to use trademark law to restrict the distribution of WBD's series must be carefully balanced against WBD's significant

4

First Amendment interests.  Because the traditional "likelihood of confusion" test ordinarily applicable to claims of trademark infringement does not adequately take these First Amendment interests into account, courts nationwide, including those within the Third Circuit, have adopted an alternate test, first set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir. 1989), to determine whether use of a trademark in connection with an expressive work is infringing.

        **1.**      ***Rogers* bars trademark claims so long as the use of the mark has some artistic relevance to the work and is not explicitly misleading.**

In *Rogers*, the Second Circuit considered Lanham Act claims asserted by famous entertainer Ginger Rogers—known, among other things, as part of a duo with Fred Astaire—against the producers of a film entitled "Ginger and Fred."  The film tells the story of two fictional Italian cabaret performers who emulated the routines of Rogers and Astaire and became known in Italy as "Ginger" and "Fred."  Rogers contended that the film's title created the false impression in the mind of the public that the defendants' film was about her or that she had sponsored, endorsed, or been involved in the film.  *Rogers*, 875 F.2d at 997.

The Second Circuit explained that, while the public has a right not to be explicitly misled about the source of an expressive work, creators also have a right to communicate their artistic visions—and, indeed, the public shares in that interest, as they too "have an interest in enjoying the results of the author's freedom of expression."  *Id.* at 998.  Trademark law must therefore cede some ground to the First Amendment, and courts "cannot indulge in the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process."  *Id.* at 999 (quoting *Cohen v. California*, 403 U.S. 15, 26 (1971)).  The *Rogers* Court concluded that "the expressive element of titles requires more protection than the labeling of ordinary commercial products," and so the standard "likelihood of confusion" test should not apply.  *Id.* at 998, 1001 ("To the extent that there is a risk that the title will mislead some

consumers as to what the work is about, that risk is outweighed by the danger that suppressing an artistically relevant though ambiguous title will unduly restrict expression"); *see also Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) ("[W]hen a trademark owner asserts a right to control how we express ourselves … applying the traditional test fails to account for the full weight of the public's interest in free expression.").

Instead, the *Rogers* Court adopted a two-step inquiry.  The Court held that use of another's mark in an expressive work is protected so long as (i) the use has some *minimal* artistic relevance to the work, and (ii) the speaker is not *explicitly* misleading as to the source of the work.  *Id.* at 999.  The first step is necessary because a "misleading title with no artistic relevance cannot be sufficiently justified by a free expression interest."  *Id.*  The second step is necessary to prevent "flagrant deception," where the speaker expressly, and falsely, indicates that the work is affiliated with some other source.  *Id.* at 999–1000.

Importantly, the Court insulated from trademark claims even those expressive uses of another's mark that that are "ambiguous" or "implicitly misleading" as to source or affiliation. *Id.* at 1000.  The Court ultimately ruled in favor of the defendant filmmakers *despite* Rogers' evidence of actual consumer confusion.  *Id.* at 1001 ("As both the survey and the evidence of the actual confusion among the movie's publicists show, there is no doubt a risk that some people" would be misled by the title).  In the absence of any *explicit* statement that Rogers was the source of the film, the artistically relevant use of her name in connection with the defendants' expressive work did not constitute trademark infringement as a matter of law.

### 2.    The *Rogers* test is universally applied, including in this Circuit.

The *Rogers* test has been expressly adopted by nearly every federal Circuit that has considered the question.  *E.g.*, *Mattel, Inc.*, 296 F.3d at 902; *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 936–37 (6th Cir. 2003); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658,

665 (5th Cir. 2000); *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278

(11th Cir. 2012) ("[W]e have no hesitation in joining our sister circuits by holding that we should

construe the Lanham Act narrowly when deciding whether an artistically expressive work

infringes a trademark.").  Congress similarly endorsed *Rogers* when it passed the Trademark

Modernization Act of 2020.  *See* H.R. Rep. No. 116-645, at 20 (2020) ("In enacting this

legislation, the Committee intends and expects that courts will continue to apply the *Rogers*

standard to cabin the reach of the Lanham Act in cases involving expressive works.").

The Third Circuit affirmed the application of *Rogers* in a trademark dispute over the title

of an expressive work.  *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) (applying

*Rogers*), aff'd without opinion, 156 F.3d 1225 (3d Cir. 1998).  Other than affirming its

application in *Seale*, the Third Circuit has only sparingly had occasion to consider *Rogers*.  In

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1015–16 (3d Cir. 2008), the Court of Appeals

described the *Rogers* test as being applicable "to Lanham Act claims against works of artistic

expression," and explained that the paradigmatic *Rogers* case is one in which a trademark is used

in "the title of a creative work."  *Id.*  But *Facenda* did not involve the use of a mark in an

expressive work (it involved purely commercial speech), and so application of *Rogers* was not

necessary.  The court was clear that "we err on the side of fully protecting speech when

confronted with works near the line dividing commercial and noncommercial speech," but did

not view the dispute in *Facenda* "as close to that boundary."  *Id.*[1]

---

[1] The only other time the Third Circuit has had cause to consider *Rogers* was in *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 157 (3d Cir. 2013).  Like *Facenda*, *Hart* was a case in which the defendant pushed the boundary of *Rogers* well past its traditional purview—arguing that it should apply to defeat a right of publicity claim based on the use of an athlete's likeness within the content of an expressive work, but not in the work's title.  The Third Circuit declined to extend *Rogers* to that new context.  *Id.* at 157.  That is a far cry from this litigation, which involves the core *Rogers* context of a trademark claim based on an allegedly infringing title.

Based on the Third Circuit's precedent, the weight of authority from its sister Circuits, and Congressional guidance in its recent trademark legislation, there can be no doubt that this Court should apply *Rogers* as the appropriate mechanism for balancing WBD's First Amendment interest in choosing a title for its expressive work.

### 3. WBD's First Amendment defense under *Rogers* may be decided on a Rule 12(b)(6) motion.

District courts in this Circuit and nationwide routinely dismiss trademark infringement claims involving expressive works on Rule 12(b)(6) motions.  *See*, *e.g.*, *Hidden City Philadelphia v. ABC, Inc.*, 2019 WL 1003637, at *1 (E.D. Pa. 2019) (granting motion to dismiss trademark infringement and dilution claims involving similar titles under *Rogers*); *UFO Mag., Inc. v. Showtime Network, Inc.*, 2022 WL 16645041, at *4 (D. Wyo. July 21, 2022) (dismissing claim that defendant used trademark owned by plaintiff as the title of a television series); *Belin v. Starz Ent., LLC*, 2022 WL 2192999, at *10 (C.D. Cal. June 17, 2022) (same).  Resolving Lanham Act claims that implicate the First Amendment on a Rule 12 motion helps avoid the inherent chilling effect that subjecting a speaker to protracted and costly litigation would cause.[2] As discussed below, because it is apparent from the face of the Complaint that WBD has a meritorious defense under the First Amendment, the Complaint should be dismissed.

### B. WBD's Use of the Title "*Ugliest House in America*" is Artistically Relevant to its Television Series.

The first step in deciding whether the First Amendment bars a Lanham Act claim is to

---

[2] Indeed, the Congressional Judicial Committee notes on the Trademark Modernization Act of 2020, referenced above, emphasizes that federal courts should not adopt any "test that departs from *Rogers*, including any that might require a court to engage in fact-intensive inquiries and pass judgment on a creator's 'artistic motives' in order to evaluate Lanham Act claims in the expressive-works context," concluding that such an exercise "would be contrary to the Congressional understanding of how the Lanham Act should properly operate to protect important First Amendment considerations."  H.R. Rep. No. 116-645, at 20 (2020).

determine whether the allegedly infringing use has any artistic relevance to the expressive content. If it does, then the Court will proceed to step two (whether the use is explicitly misleading). Here, WBD's title *Ugliest House in America* plainly has artistic relevance to the expressive content of the television series. It is perhaps the most descriptive and straightforward title that the series could have. HomeVestors concedes relevance: as described in its Complaint, WBD's television series "chronicles [its host, Retta] as she 'travels across the country to tour properties nominated by their owners as the ugliest homes around.'" Compl., ¶ 31. The program is about finding the ugliest houses in America, and so naturally it is called *Ugliest House in America*.

The requirement of "artistic relevance" is a "low threshold." *Hidden City Philadelphia*, 2019 WL 1003637, at *4. It is only when a use has "no artistic relevance to the underlying work whatsoever" that a use "does not merit First Amendment protection." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008). "In other words, the level of relevance merely must be above zero." *Id.*; *see also Dillinger, LLC v. Elec. Arts Inc.*, 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) ("[I]t is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be; consistent with *Rogers*, any connection whatsoever is enough.").[3] Nor is it a requirement that a

---

[3] Courts considering other television series' titles have found them artistically relevant even when their association with the subject matter of the show is far looser or less obvious than the title at issue here. *See, e.g.*, *Twentieth Century Fox v. Empire Distribution, Inc.*, 875 F.3d 1192, 1198 (9th Cir. 2017) (finding artistic relevance where the network "used the common English word 'Empire,'" in a television series about a "music and entertainment conglomerate" that was "itself a figurative empire"); *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 680–81 (11th Cir. 2022) ("relationship between the series title ["Floribama Shore"] and the series content itself is well above the artistic relevance threshold," because the term "Floribama" [a portmanteau combining Florida and Alabama] described the geographic area and subculture profiled in defendants' series).

title be so necessary to the series as to foreclose all alternative titles.  *See MGFB Props.*, 54 F.4th at 681 ("[I]t would be improper for courts to decide what forms of expression are 'necessary.'"); *see also Parks v. LaFace Recs.*, 329 F.3d 437, 450 (6th Cir. 2003) (courts should not be "entangle[d] in the process of titling works of art").  For that reason, HomeVestors' assertion in the Complaint that there "are many synonyms" for the (extraordinarily common) words "house" and "ugly" and that WBD "could have used a different name for the show that did not use the words UGLIEST HOUSE" (Compl., ¶¶ 50, 51) is entirely beside the point.  HomeVestors' trademark interests do not give it the right to preclude all others from creating expressive content about ugly houses, and the "possibility that alternate avenues of expression might have been used does not create a valid Lanham Act claim." *Rogers*, 875 F.2d at 1006.  WBD's creative decision to describe its work using the most relevant, natural, and obvious words is protected by the First Amendment and easily satisfies the first prong of *Rogers.*

### C.    WBD's Use of the Title "Ugliest House" Does Not Explicitly Mislead as to the Source of the Television Series.

Because the title "*Ugliest House in America*" is artistically relevant to WBD's series, HomeVestors cannot state a claim for trademark infringement unless the title *explicitly* misleads as to the source of the program.  "A work's title is not 'explicitly misleading' absent an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that causes consumer confusion." *Hidden City Philadelphia*, 2019 WL 1003637, at *4 (quoting *Twentieth Century Fox*, 875 F. 3d at 1199).

The examples given in *Rogers* help clarify what it means to explicitly mislead.  There, the court explained that some titles, such as "Nimmer on Copyright" or "Jane Fonda's Workout Book" "explicitly state the author of the work or at least the name of the person the publisher is entitled to associate with the preparation of the work." *Rogers*, 875 F.2d at 999.  Those sort of overt references to another as the creator or author are what may "warrant application of the

Lanham Act, even if the title had some relevance to the work." *Id.* Here, of course, there is no such explicit reference to HomeVestors.

The title of WBD's program certainly does not reference HomeVestors. Nor does it reference the "We Buy Ugly Houses" brand. *Compare* Compl. at pp. 10–11 (title art for *Ugliest House in America*) with Exhibit A (HomeVestors' trademarks and logos). All HomeVestors can point to in its Complaint is that WBD's series title incorporates two words that are also contained in HomeVestors' trademark.[4] But using a portion of another's mark in the title of an expressive work, without more, does not explicitly mislead as to the source of the work—to conclude otherwise "would render *Rogers* a nullity." *Mattel, Inc.*, 296 F.3d at 902; *Dillinger*, 2011 WL 2457678, at *8 ("Plaintiff points to no explicit misrepresentation—that fact alone is dispositive of this issue."); *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 947 F. Supp. 2d 922, 932 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) (explicitly misleading is "a high bar" that requires "some affirmative statement of the plaintiff's sponsorship or endorsement, *beyond the mere use of Plaintiff's name or other characteristic*") (emphasis added).

Importantly, this is *not* a question of whether there is any likelihood of confusion or an implicit connection between the HGTV title and HomeVestors. *Rogers* and its progeny emphasize that some confusion is an acceptable consequence of adequately protecting First Amendment interests.[5] Even if the plaintiff puts forward survey evidence "demonstrating that consumers of the [work] believed that [the plaintiff] endorsed [it], that would not support the

---

[4] HomeVestors' trademark registration is for "The Ugliest House of the Year," *not* "Ugliest House in America." The only common elements are the common English phrase "ugliest house."

[5] WBD vehemently disputes that there is any possibility of confusion, much less a likelihood of confusion, between HomeVestors' "ugliest house" contest and WBD's television series about "ugly" houses. However, for purposes of this motion, WBD need not address the likelihood of confusion, because both affirmative defenses raised by this motion preclude any trademark infringement claims *even if* there were a likelihood of confusion.

claim that the use was explicitly misleading to consumers." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1246 (9th Cir. 2013); *ETW Corp.*, 332 F.3d at 937 (survey evidence "indicates at most that some members of the public would draw the incorrect inference" of affiliation, but such "risk of misunderstanding, not engendered by any explicit indication on the face of the [work], is so outweighed by the interest in artistic expression as to preclude application of the [Lanham] Act.").

All that is necessary to defeat HomeVestors' trademark infringement claim is that the title "*Ugliest House in America*" does not include any overt reference to HomeVestors.  Indeed, even *intentional copying* of HomeVestors' mark (which is not alleged here) would not suffice to sustain trademark infringement claims.  *MGFB Props.*, 54 F.4th at 682–83.  As the Eleventh Circuit recently explained in connection with the *Floribama* television series discussed above, the operative question is whether the defendant "overtly 'marketed' the protected work "as 'endorsed' or 'sponsored'" by the primary user or 'otherwise explicitly stated' that the protected work was 'affiliated' with the primary user.  The question is *not* whether the artist intends to copy."  *Id.* (cleaned up).  HomeVestors does not—and cannot—allege that there is any such overt reference and therefore its claims fail as a matter of law.

## II.    HOMEVESTORS' TRADEMARK CLAIMS ARE ALSO BARRED BY THE FAIR USE DOCTRINE.

Separate and apart from the protections afforded by the First Amendment, WBD's use of the descriptive title "*Ugliest House in America*" is also protected as "classic" fair use.  This species of fair use permits a defendant to use another's mark to describe an aspect of defendant's own product.  The doctrine exists precisely for the situation at issue in this case.  When "a plaintiff chooses a mark with descriptive qualities, the fair use doctrine recognizes that 'he cannot altogether exclude some kinds of competing uses,' particularly those which use words in

their primary descriptive and non-trademark sense." *Smith v. Ames Dep't Stores, Inc.*, 988 F. Supp. 827, 836 (D.N.J. 1997), *aff'd*, 172 F.3d 860 (3d Cir. 1998); *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) ("The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods.") (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980)); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) ("Under the fair use doctrine, 'the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense.'").

Importantly, and like the First Amendment defense described above, fair use bars trademark infringement claims *even if* there is actual consumer confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121–22 (2004) ("Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use, and so it is."); *Hensley*, 579 F.3d at 612 (plaintiff "assumed the risk" of some consumer confusion ensuing by choosing to use a descriptive term as its trademark). Classic fair use is therefore ripe for adjudication on a motion to dismiss, as any evidence of actual confusion is strictly irrelevant. *See, e.g.*, *Clinical Nutrition Centers, Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 135 F. Supp. 3d 1267, 1276 (N.D. Ga. 2013) (granting motion to dismiss in a classic fair use case); *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 839 (E.D. Mich. 2015), *aff'd*, 672 F. App'x 575 (6th Cir. 2017) (same); *McZeal v. Amazon Servs., LLC*, 2021 WL 5213099, at *2 (C.D. Cal. Nov. 8, 2021).

In order to establish fair use, WBD need only demonstrate that it used the allegedly infringing term "merely to describe their product" and not as a trademark, and that it used the

13

term in good faith.  *Institute for Scientific Info. v. Gordon and Breach, Science Publishers*, 931

F.2d 1002, 1008 (3d Cir. 1991); *see also* 15 U.S.C. § 1115(b)(4) (it is a defense to trademark

infringement for a defendant to use a plaintiff's mark "otherwise than as a mark" if that use "is

descriptive of and used fairly and in good faith only to describe the goods or services of such

party").  Because WBD uses the common words "ugliest house" as a good faith *description* of its

own television series, WBD's usage is protected as fair use.

> A.     **WBD Used the Term "Ugliest House" Merely to Describe its Program and not in a Trademark Sense.**

As discussed above, WBD's television series is about the search for the ugliest house in

America.  And so it is called *Ugliest House in America*.  It is hard to conceive of a title that

would be more descriptive of the program.  The fact that HomeVestors, in turn, has adopted the

common English words "ugly" and "house" as a part of its brand does not give it the right to

exclude others from using those words descriptively.  *See Car-Freshener Corp. v. S.C. Johnson*

*& Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995) ("It is a fundamental principle marking an outer

boundary of the trademark monopoly that, although trademark rights may be acquired in a word

or image with descriptive qualities, the acquisition of such rights will not prevent others from

using the word or image in good faith in its descriptive sense, and not as a trademark."); *Castro*

*v. Entrepreneur Media, Inc.*, 2011 WL 13234330, at *3 (W.D. Tex. Apr. 28, 2011) ("[T]he

Lanham Act does not limit the use of common English words when those words are used in their

descriptive or dictionary sense and not in a trademark sense.").  Use of a term to describe the

nature and content of a good or service is per se a non-trademark use.

On top of that, the use of a term in the title of an expressive work is also inherently a non-

trademark use.  "A title is designed to catch the eye and to promote the value of the underlying

work. Consumers expect a title to communicate a message about the book or movie, but they do

not expect it to identify the publisher or producer." *Mattel, Inc.*, 296 F.3d at 902; *see also Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (the title of an expressive work "is not, and the public would not interpret it to be, a source-denoter").

WBD's use of the term "ugliest house" is purely descriptive, using the words in their primary, non-trademark sense.  The title "Ugliest House in America" tells the viewer what the program is *about*, but it does not tell the viewer who created the program or who distributes it. Indeed, while HomeVestors has included only a few images relating to the advertisement of the series in its Complaint, one of them conspicuously references HGTV (a WBD network) as the source of the program (Compl., ¶ 36):



**B.      WBD Used the Term "Ugliest House" in Good Faith.**

The reason that WBD chose to use the term "ugliest house" as part of the title of its television series is quite obvious: the title tells the viewer exactly what the program is about. Nothing in the title suggests any intent to reference HomeVestors or its brand.  The only plausible inference from the allegations in the Complaint is that WBD acted in good faith—i.e., with a bona fide reason—in choosing that title.  HomeVestors' Complaint is devoid of any factual allegations to the contrary.

At most, HomeVestors alleges that WBD knew about the existence of HomeVestors and its brand before releasing the program.  *See* Compl., ¶¶ 26–28 (alleging that the production entity

Big Fish Entertainment communicated with HomeVestors about "opportunities for a mutually beneficial collaboration").[6]  But mere knowledge of another's mark is insufficient to raise an inference of, much less establish, bad faith.  *See, e.g.*, *Sorensen v. WD-40 Co.*, 792 F.3d 712, 725 (7th Cir. 2015); *cf. Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 584 (2d Cir. 1991) (actual knowledge of another's trademark is nevertheless "consistent with good faith").

A defendant has acted in good faith if it used the allegedly infringing mark for reasons other than to appropriate a plaintiff's goodwill.  For instance, "selecting a mark because it conveys the product's purpose or characteristics" demonstrates good faith.  *E.S. Originals, Inc. v. Stride Rite Corp.*, 656 F. Supp. 484, 490 (S.D.N.Y 1987); *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d.Cir.1993) (superseded on other grounds).  Good faith is also shown by a defendant's decision to display its own trademark or source identification next to the allegedly infringing mark.  *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1275 (11th Cir. 2006); *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).

Here, it is apparent from the face of the Complaint that WBD selected the mark because it described the nature and characteristics of its program.  This bona fide reason supports fair use as a matter of law.  *See Thoroughbred Legends, LLC v. Walt Disney Co.*, 2008 WL 616253, at *9 (N.D.G.A. Feb. 12, 2008).  WBD's use of the term "Ugliest House" in the title of a program about ugly houses conveys no information about the origin of the program.  Rather, the program's origin is apparent from WBD's use of the HGTV logo in connection with the program—a fact readily conceded in the Complaint.  Compl., ¶ 36.  By contrast, HomeVestors

_____

[6] HomeVestors does not allege that Big Fish Entertainment ever expressed interest in using or licensing HomeVestors' trademark, or otherwise expressed interest in using HomeVestors' goodwill to advertise the show.

has not alleged any facts that would support an inference that WBD intended to associate itself with HomeVestors' brand, or to profit on HomeVestors' goodwill.  In this regard, the allegation that Big Fish Entertainment initially communicated with HomeVestors about potential opportunities for a "mutually beneficial collaboration" that ultimately did not go anywhere does not in any way demonstrate that WBD intended to trade on HomeVestors' goodwill.  *See Thoroughbred Legends*, 2008 WL 616253 at *1, 9 (defendants' use of "RUFFIAN" as the title of a film about the horse Ruffian was fair use as a matter of law, notwithstanding that defendant declined a license to use the "Ruffian" trademark from plaintiff).

Because the Complaint shows that WBD had a bona fide reason for choosing the title "Ugliest House in America" to describe its work, its choice of title is fair use as a matter of law.

## III.   HOMEVESTORS' DILUTION CLAIMS ARE ALSO BARRED BY THE FIRST AMENDMENT AND THE FAIR USE DOCTRINE

HomeVestors' federal dilution claims under 15 U.S.C. § 1125(c), like its federal trademark infringement claims, are barred by the First Amendment and the fair use doctrine.  *See Hidden City Philadelphia*, 2019 WL 1003637, at *5 (because "*Rogers* precludes Hidden City's trademark infringement claim, Hidden City's dilution claim also fails under *Rogers*").

Section 1125(c) explicitly provides that "[a]ny noncommercial use of a mark" is not actionable as trademark dilution.  15 U.S.C. §1125(c)(3)(C).  As an expressive work, WBD's television program constitutes noncommercial speech as a matter of law.  *See Joseph Burstyn, Inc. v. Wilson*, 342 U.S. 495, 501-02 (1952) (That books, newspapers, magazines, and motion pictures "are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment"); *Raymen v. United Senior Ass'n*, 409 F. Supp. 2d 15, 23 (D.D.C. 2006) ("Whether a communication is commercial or noncommercial is a question of law.").

Likewise, section 1125(c)(3)(A) explicitly provides that "[a]ny fair use," including a "descriptive fair use" does not constitute actionable trademark dilution.  HomeVestors' dilution claim is therefore also barred for the reasons discussed above.

Finally, HomeVestors' state law unfair competition and dilution claims under 6 Del. C. § 3313 are likewise precluded by the First Amendment and fair use doctrine.  While Delaware case authority in this area is sparse, "decisions in other states that enacted anti-dilution statutes similar or identical to Delaware's statute have provided guidance in construing the Delaware law." *Spark Therapeutics, Inc. v. Bluebird Bio, Inc*., 2022 WL 605724, at *13 (D. Del. Jan. 25, 2022).  In particular, because New York has an identical anti-dilution statute, Delaware courts have looked to cases applying New York law when interpreting § 3313. *Id.*, at *14.  New York anti-dilution law is "substantively similar" to federal law, such that claims under the two laws "may be analyzed together." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc*., 156 F. Supp. 3d 425, 435 n.3 (S.D.N.Y.), *aff'd*, 674 F. App'x 16 (2d Cir. 2016) ("when a defendant establishes fair use for purposes of federal law, related state law claims also fail"); *see also Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012) (state law claim under New York's anti-dilution statute dismissed where based on the same permissible conduct as federal Lanham Act claim); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) ("the same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law").

Accordingly, HomeVestors' claims for dilution and its claims under Delaware state law fail as a matter of law.

## **CONCLUSION**

There can be no doubt that WBD is legally permitted to make and distribute a television

series about finding and renovating the "ugliest house" in America.  It would be a perversion of trademark law to find that WBD is not allowed to call such a program "Ugliest House in America."  HomeVestors made the choice to adopt descriptive, plain English words as its brand. Whatever trademark rights HomeVestors may have in those ordinary words does not preclude others from using them to fairly and accurately describe their own artistic works.  Both the First Amendment and the doctrine of fair use protect the right of speakers like WBD to express themselves and these doctrines bar all of the claims asserted by HomeVestors as a matter of law. Therefore, WBD respectfully requests that the Court dismiss HomeVestors' Complaint without leave to amend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Aaron J. Moss
Joshua Geller
GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
2049 Century Park East
Suite 2600
Los Angeles, CA  90067
(310) 553-3610

February 17, 2023

Michael J. Flynn (#5333)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*
*Warner Bros. Discovery, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 17, 2023, upon the following in the manner indicated:

Kelly E. Farnan, Esquire                                  *VIA ELECTRONIC MAIL*
Christine D. Haynes, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Justin S. Cohen, Esquire                                  *VIA ELECTRONIC MAIL*
Dina W. McKenney, Esquire
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX  75201
*Attorneys for Plaintiff*

Tracy Zurzolo Quinn, Esquire                              *VIA ELECTRONIC MAIL*
HOLLAND & KNIGHT LLP
2929 Arch Street, Suite 800
Philadelphia, PA  19104
*Attorneys for Plaintiff*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)