IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1583-RGA |
| | ) | |
| WARNER BROS. DISCOVERY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

HomeVestors of America, Inc. ("HomeVestors") filed suit against Warner Bros. Discovery, Inc. ("WBD") alleging trademark infringement and dilution because of WBD's use of the title "Ugliest House in America" in connection with a TV show on one of WBD's networks. (D.I. 1, 14). WBD moves to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) on the grounds that its First Amendment affirmative defense immunizes it from liability. (D.I. 15). The motion is fully briefed (D.I. 16, 18, 21), including sur-replies (D.I. 26, 27), and I heard argument on September 7, 2023. For the following reasons, I recommend that WBD's Motion to Dismiss be DENIED.

FILED

OCT 18 2023

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## I. Background[1]

HomeVestors is the franchisor of a business system relating to buying, renovating, and selling homes. (D.I. 14 at 2–3). As part of this business system, HomeVestors owns more than 30 trademarks involving the word "ugly" in connection with houses. (*Id.* at 7). These marks include "THE UGLIEST HOUSE OF THE YEAR," a mark that is used primarily in connection with a yearly home renovation contest that showcases one extreme home makeover, as voted on by the public. (*Id.* at 3, 6).

HomeVestors alleges that it was contacted by Big Fish Entertainment on behalf of WBD in June 2020 regarding the possibility of collaborating on a new show for WBD's HGTV network. (*Id.* at 10). Big Fish Entertainment said they were "on the hunt for homeowners of the ugliest houses in America" and they indicated that they wanted to use HomeVestors' network and brand to find homeowners to appear on the show. (*Id.*). Big Fish Entertainment subsequently put conversations with HomeVestors on hold and ultimately chose not to collaborate with HomeVestors. (*Id.* at 11).

In 2022, HGTV premiered a new show called "Ugliest House in America." (*Id.* at 12). HGTV also ran a contest that coincided with the premiere of its new show, called "HGTV's UGLIEST $5k GIVEAWAY," emphasizing the word "ugliest." (*Id.* at 13). HomeVestors contacted WBD in January and February of 2022 regarding the likelihood of confusion as to whether the HGTV show is affiliated with or sponsored by HomeVestors. (*Id.* at 14–15). When

---

[1] The facts set forth herein are taken from the allegations in the First Amended Complaint, which I assume to be true for purposes of resolving the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

HomeVestors found WBD's response unsatisfactory, it filed this lawsuit claiming trademark infringement, unfair competition, and, under both federal and Delaware law, trademark dilution. (*Id.* at 17–20). In response to Defendant's February 17, 2023 Motion to Dismiss, (D.I. 11), HomeVestors filed a First Amended Complaint. (D.I. 14). Defendant again moved to dismiss. (D.I. 15). After briefing was complete, the Supreme Court issued its decision in *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140 (2023). At the request of the parties, the Court allowed supplemental briefing to address the impact of *Jack Daniel's* on the pending motion to dismiss. (D.I. 25, 26, 27).

## II. Legal Standards

### A. Motion to Dismiss

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean

3

probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

### B. Trademark Infringement

To prove trademark infringement under the Lanham Act, 15 U.S.C. § 1114, "a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994).

Recognizing that an overly expansive application of trademark law might restrict free expression under the First Amendment, however, the Second Circuit set forth a test in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) to determine whether an alleged infringer's use is protected. Under *Rogers* and its progeny, a trademark used in an accused expressive work infringes only if (1) the mark has "no artistic relevance" to the accused work, and (2) the use of the mark is explicitly misleading as to the source or the content of the work. *Id.* at 999.

In response to an alleged infringer's argument that its artistically expressive use of a trademark may be protected by the First Amendment, several circuits adopted the *Rogers* test. *See, e.g., Parks v. LaFace Records*, 329 F.3d 437, 451–52 (6th Cir. 2003) (applying *Rogers* to a song title), *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (same); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 & n. 7 (5th Cir. 1999) (adopting *Rogers* in a case concerning

a book title).[2] The Third Circuit has not explicitly adopted or rejected *Rogers*. It did, however, summarily affirm at least one case in which a lower court applied *Rogers*. *See Seale v. Grammercy Pictures, Inc.*, 156 F.3d 1225 (3d Cir. 1998) (affirming *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) without opinion).

*Rogers* does not insulate all expressive works from liability for trademark infringement. The Supreme Court's recent decision in *Jack Daniel's* clarifies the circumstances under which threshold tests like *Rogers* may apply. In *Jack Daniel's*, the Court considered whether the First Amendment insulated the manufacturer of a dog toy that parodied a well-known brand of whiskey from liability for trademark infringement. *Jack Daniel's*, 599 U.S. at 144–45. The Court held that threshold tests for infringement like *Rogers* do not apply "when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark" regardless of whether the use communicated some other message beyond source identification. *Id.* at 145.

### C. Federal and State Trademark Dilution

To state a claim for dilution under the Lanham Act, a plaintiff must plead facts to show "(1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of

---

[2] The legislative history of subsequent amendments to the Lanham Act suggests that Congress has also endorsed *Rogers* or at least expects that *Rogers* is good law in most places. *See* H.R. Rep. No. 116-645, at 20 (2020) ("In enacting this legislation, the Committee intends and expects that courts will continue to apply the Rogers standard to cabin the reach of the Lanham Act in cases involving expressive works."). The Supreme Court, in *Jack Daniel's*, however, declined to weigh in on whether *Rogers* is an appropriate test. *Jack Daniel's*, 599 U.S. at 155 ("The point is that whatever you make of *Rogers*–and again, we take no position on that issue–it has always been a cabined doctrine.").

the four factors listed in § 1125(c)(2)(a); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark became famous; and (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Lingo v. Lingo*, 785 F. Supp. 2d 443, 455 (D. Del. 2011) (citing *Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 163 (3d Cir. 2000)).

Delaware's Trademark Act provides "[L]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties, or the absence of confusion as to the source of goods or services." 6 *Del. C.* § 3313. "Proof of distinctiveness necessary to satisfy the anti-dilution statutes typically is the same proof used to show inherent or acquired distinctiveness for infringement purposes under the Lanham Act." *Barnes Group, Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1304 (D. Del. 1992).

## III. Discussion

### A. Trademark Infringement

WBD seeks dismissal of HomeVestors' claim for trademark infringement on the grounds that its First Amendment affirmative defense precludes liability under the Lanham Act. (D.I. 16 at 2). WBD argues that this Court should apply *Rogers*, and that the Supreme Court's opinion in *Jack Daniel's* does not meaningfully alter the analysis because the holding in *Jack Daniel's* concerns "branded, consumer product[s]," not "the descriptive title of a television series." (D.I. 27 at 1). Stated more plainly, WBD does not contest (at least for purposes of its motion) that it uses HomeVestors' mark; instead, it argues that its use of the mark cannot be infringing under *Rogers* because its use is in the title of a TV show, which is an expressive work. (Hr'g Tr. 8:12–

6

21, Sept. 7, 2023 ("Tr.")).[3] But, I do not read *Jack Daniel's* to be compatible with a blanket rule that any title alleged to infringe another's mark is necessarily entitled to a *Rogers* analysis or is necessarily non-infringing. Instead, *Jack Daniel's* makes clear that a First Amendment defense under *Rogers* does not apply if an alleged infringer's use of the mark is source-identifying.

As a result, the critical issue here is whether WBD's use of the title "Ugliest House in America" is source-identifying—"in other words, has [WBD] used a trademark as a trademark." *Jack Daniel's*, 599 U.S. at 145. If it is, following *Jack Daniel's*, a threshold test like *Rogers* does not apply.[4] *Rogers* was the sole basis on which WBD moved to dismiss (*see* D.I. 16, 21, and 27; Tr. 3:12-23); thus, if WBD's use of HomeVestors' mark is source-identifying, then WBD's motion to dismiss must be denied. Because this dispute is before me on a motion to dismiss pursuant to Rule 12(b)(6), however, I do not need to conclusively determine whether WBD's use of the mark is source-identifying. Rather, at the moment, I only need to determine whether WBD's First Amendment defense warrants dismissal of the First Amended Complaint.

In *Jack Daniel's*, there was no dispute between the parties that VIP Products was using the mark in a source-identifying way. Not so here. However, neither party could articulate a test or

---

[3] And, I note that HomeVestors' claims in the First Amended Complaint appear to extend beyond just the title of the show to include the renovation contest, recruiting homeowners for the contest, and the $5k giveaway—which, arguably, would not benefit from whatever protective standard may be associated with the title of an expressive work. *See* D.I. 14 at 13–16; *see also* Tr. 44:2–24.

[4] I take no position on the broader issue of whether *Rogers* applies in the Third Circuit. Instead, my references to *Rogers* and its test (or tests like it) are offered to contextualize and frame the argument advanced by Defendant.

method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way.[5] And, at argument, the parties disputed whether the determination of such is a question of law, question of fact, or a mixed question of law and fact. (Tr. 8:22–9:1, 41:67). Even if the determination is not ultimately a question of fact (though it very well may be), the question of whether the use of a mark is source-identifying likely contains underlying questions of fact.[6] *See, e.g., Jack Daniel's*, 599 U.S. at 160 (citing, among

---

[5] WBD argued at the hearing that there were three possible ways to look at the question of whether a mark is being used in a source-identifying way. (Tr. 5:10-12). None of the identified ways are particularly helpful in this case, however. WBD's first identified method was to look at the facts of *Jack Daniel's*. (*Id.*). But, in *Jack Daniel's*, there was no dispute that the mark was being used in a source-identifying way so the Court did not undertake an extensive analysis on that issue. Second, WBD argued, I should look to *Mattel*, which precedes *Jack Daniel's*. (*Id.* at 6:6–7:13). But in *Mattel*, source-identification was not the issue. Instead, the *Mattel* court found that the song was non-infringing because of parody–"[t]he song does not rely on the Barbie mark to poke fun at another subject but targets Barbie herself." *Mattel*, 296 F.3d at 901. The allegation in this case is meaningfully different; it is that WBD is using HomeVestors' mark for the purpose of exploiting its recognizable brand. Last, WBD argued that the general principles of trademark law should inform my conclusion that WBD's mark is not being used in a source-identifying way. (*Id.* at 7:20–8:21). Specifically, Defendant argued that "you have to look at Defendant's use of the phrase. And here, it is a purely descriptive use." (*Id.* at 8:15–19). While WBD may ultimately be correct, at this stage, HomeVestors pleads facts–that I must take as true–showing otherwise.

[6] This notion is consistent with the law governing trademark prosecution. When determining whether a proposed mark is eligible for trademark status, an examiner places it into one of several categories reflecting the nature of the proposed mark. *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 971–72 (Fed. Cir. 2018). Specifically, proposed marks may be categorized, in ascending order of entitlement to protection, as generic, merely descriptive, suggestive, or fanciful. *Id.* at 972. How well the proposed mark serves as a source indicator is an important consideration underlying this categorization, with generic marks, for example, being incapable of serving as source indicators and therefore ineligible for trademark protection. *See id.* The determination of which category a proposed mark falls into is a question of fact. *Id.*

other things, the appearance of the tag and the alleged infringers' treatment of other marks for similar products in concluding that the use of the mark was source-identifying).

Whether the determination is one of fact, law, or mixed, and whatever the "test" may be, HomeVestors argues that it sufficiently pled facts in its First Amended Complaint that, if taken as true, could plausibly allow the Court to infer that WBD's use of HomeVestors' mark was source-identifying. (D.I. 26 at 2). I agree. Specifically, HomeVestors alleges that the marks are similar (D.I. 14 at 12), that both parties run a contest related to ugliest homes (*Id.*), that internet searches for HomeVestors' marks return results for WBD's show, (*Id.* at 15), that promotional materials for the show emphasize the words in common with HomeVestors' marks, (*Id.* at 12–13), that WBD, either itself or through its agent, initially sought to take advantage of consumer recognition of HomeVestors' brand for casting purposes (*Id.* at 11), and that WBD is actively competing with HomeVestors franchisees for houses and homeowners (*Id.* at 14).

WBD responds that HomeVestors failed to assert facts to support the conclusion that its use of the mark is source-identifying because, essentially, its use of the mark in a title renders its use non-source-identifying. (Tr. 12:22–13:5). WBD has not provided me with any authority holding that use of a mark in a title of a TV show is always non-source-identifying. And, in this case, HomeVestors has alleged facts to support the conclusion that WBD's use is source-identifying, rather than merely expressive: HomeVestors points not only to the similarity of the marks, likelihood of customer confusion, and its allegation that the parties are competitors, but also to the fact that WBD initially tried to partner with HomeVestors for the purpose of capitalizing on HomeVestors' brand.

In addition, WBD objects to considering customers' likelihood of confusion, or whether the two parties are competitors, on the issue of whether a mark is source-identifying because it

9

argues that *Rogers* is designed to short-cut any sort of fact intensive inquiry. (D.I. 27 at 1, Tr. 23:15–25). Maybe so, but *Jack Daniel's* makes clear that *Rogers* does not apply if a mark is used in a source-identifying way. So while I note WBD's insistence that consideration of such facts would be "self-defeating," (Tr. 63:12), I also note that WBD could not tell me exactly *what* the Court *should* take into account at this stage in determining whether a mark is used in a source-identifying way.

In this same vein, WBD also argues that it would be inappropriate to do anything other than determine source identification "on its face," with the "default assumption [being] that a title is not source identifying." (Tr. 64:7–16). An "on its face" determination may be possible or appropriate in some cases. For example, with respect to *Jack Daniel's*, a majority of people may be familiar with the iconic shape of the whiskey bottle, especially when combined with the distinct lettering curved over a number appearing in a circle. As counsel for WBD put it, "it's like you know it when you see it," where "it" is whether something is source-identifying or not. (Tr. 65:21–22). For *Jack Daniel's* and similarly situated products and marks, I agree. But what about other marks? Surely the test cannot be whether the judge recognizes the use of the mark? Or whether the judge merely thinks the marks look similar? At any rate, I disagree with WBD that the law requires me to make a "default assumption" to dismiss HomeVestors' First Amended Complaint.[7]

---

[7] *Cf. Attentive Mobile Inc. v. 317 Labs, Inc.*, C.A. No. 22-1163-CJB, 2023 WL 6215825, at *8 (D. Del. Sept. 25, 2023) ("Here, though, Defendants are asking the Court to grant a motion to dismiss based on the uncontroverted presence of a winning affirmative defense. And [yet] the record is unclear as to the[se] key points. [I]f the Court is asked to assume that something has to be true [as to a material matter], then the motion should not be granted.").

Instead, it seems to me that any recommendation that I make must be grounded in the facts pled in the First Amended Complaint and whether such facts are sufficient to support a plausible inference that WBD's use of the mark is source-identifying—thus precluding WBD's *Rogers* defense. Stated differently, a motion to dismiss based on affirmative defense, as is the case here, is only appropriate when defense is "apparent on the face of the complaint and documents relied on in the complaint." *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015) (citation omitted). Here, in consideration of the facts set forth in the First Amended Complaint, I cannot say that WBD's use of HomeVestors' mark is so clearly non-source-identifying as to be apparent on the face of the First Amended Complaint. Instead, I find that HomeVestors' First Amended Complaint contains plausible allegations that would allow the Court to reasonably infer that the title "Ugliest House in America" is, in fact, source-identifying. As set forth above, HomeVestors avers that the marks are similar (D.I. 14. at 12), that both parties run a contest related to ugliest homes (*Id.*), that internet searches for HomeVestors' marks return results for WBD's show, (*Id.* at 15), that promotional materials for the show emphasize the words in common with HomeVestors' marks, (*Id.* at 12–13), that WBD, either itself or through its agent, initially sought to take advantage of consumer recognition of HomeVestors' brand for casting purposes (*Id.* at 11), and that WBD is actively competing with HomeVestors franchisees for houses and homeowners (*Id.* at 14).

### B. Federal and State Dilution

WBD also asks the Court to dismiss both the federal and the state law dilution claims on the same grounds that it seeks to dismiss the infringement claim. Specifically, for federal dilution, WBD argues that the First Amendment insulates it from liability because its use of HomeVestors' mark is "noncommercial." (D.I. 16 at 15 (citing 15 U.S.C. § 1125(c)(3)(C)). I disagree. HomeVestors' First Amended Complaint pleads facts sufficient to plausibly conclude that WBD

11

is using HomeVestors' mark in a commercial manner. Specifically, HomeVestors alleges that WBD used its confusingly similar mark in advertising and marketing materials to divert potential customers away from HomeVestors for WBD's benefit (D.I. 14 at 12–14) and that WBD uses the mark to suggest an affiliation or sponsorship of the show by HomeVestors that does not exist (*Id.* at 16). I am persuaded that these facts are sufficient to allow the federal dilution claim to withstand a motion to dismiss on First Amendment grounds.

Regarding WBD's motion to dismiss HomeVestors' state dilution claims, WBD admits that case law regarding 6 *Del. C.* § 3313 is "sparse," and suggests that I may analyze the state dilution claims together with the federal dilution claim. (D.I. 16 at 15). If WBD is correct, then its motion to dismiss the state dilution claims fails for the same reasons as its motion to dismiss the federal dilution claim. That is, I do not find that HomeVestors' claims are barred by the First Amendment given the facts pled to support the plausible inference that WBD's use of HomeVestors' mark is commercial rather than merely expressive. WBD does not move to dismiss the state dilution claims on any other basis.

### IV. Conclusion

For the foregoing reasons, I recommend that the District Court DENY WBD's Motion to Dismiss.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), (C), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the Court's website.

Dated: October 18, 2023

/s/ Laura D. Hatcher
The Honorable Laura D. Hatcher
UNITED STATES MAGISTRATE JUDGE