IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOMEVESTORS OF AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 22-1583-RGA |
| v. ) | |
| ) | **REDACTED PUBLIC VERSION** |
| WARNER BROS. DISCOVERY, INC. ) | |
| ) | |
| Defendant. ) | |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS FROM KELLY E.
FARNAN IN RESPONSE TO DEFENDANT'S SEPTEMBER 26, 2024 LETTER**

OF COUNSEL:

Justin S. Cohen
Justin.Cohen@hklaw.com
Dina W. McKenney
Dina.McKenney@hklaw.com
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201
214-969-1700

Cynthia A. Gierhart
HOLLAND & KNIGHT LLP
Cindy.Gierhart@hklaw.com
800 17th Street NW, Suite 1100
Washington, DC 20006

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff
HomeVestors of America, Inc.*

Dated:  September 27, 2024

Dear Judge Andrews:

Defendant Warner Bros. Discovery, Inc's ("WBD") asks the Court to order Plaintiff HomeVestors of America, Inc. ("HomeVestors") to review over ▉▉▉▉ documents and provide testimony ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. WBD's theory is that HomeVestors' internal emails are relevant to its business reputation (i.e., the public's perception of HomeVestors). But HomeVestors is not alleging that WBD is harming HomeVestors' business reputation and, even if it were, HomeVestors' internal discussions about the allegations in the ProPublica article would have no bearing on its reputation because those discussions are not public.

## I. Background

This is a case of trademark infringement, dilution by blurring of HomeVestors' famous trademarks, and unfair competition. HomeVestors has a family of UGLY/UGLIEST trademarks covering residential real estate, including the mark THE UGLIEST HOUSE OF THE YEAR for a yearly home renovation contest. WBD infringes these marks via its television show Ugliest House in America and associated advertising using similar trademarks to solicit homeowners for its show.

ProPublica's investigation began in 2022 by contacting current and former franchisees, employees, and those that did business with HomeVestors. HomeVestors opened an internal investigation upon learning of the nature of ProPublica's investigation and allegations. When the article was published, it contained many allegations, including allegations that franchisees took advantage of senior home sellers, and targeted advertising towards seniors and the infirm:

- Former franchisee Cory Evans took advantage of an elderly woman with dementia in having her sign a purchase agreement for her house, which resulted in years of litigation and Mr. Evans pleading guilty to multiple felonies;
- "Some homeowners fought from hospital beds to keep their properties;" and
- "At least three died shortly after signing sales contracts; a fourth died after three years of worrying about money."

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

HomeVestors does not assert harm to its business reputation and does not seek damages based on reputational harm, so HomeVestors's business reputation is not relevant. Nonetheless, HomeVestors designated two top-level executives to address the public aspects of the article, its public response, and its reputation. Specifically, HomeVestors' General Counsel was designated to testify about the factual allegations in the ProPublica article, the factual allegations in follow-up articles, and HomeVestors' public actions and public statements in response to the allegations (since only the information available to the public would potentially have any relevance to HomeVestors' business reputation). HomeVestors also designated a witness on business reputation and produced all of the ProPublica articles and related articles of which it is aware.[1]

---

[1] In repeatedly questioning HomeVestors' witnesses about ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, WBD ignored that HomeVestors had a pending motion for a protective order. See Del. L. R. 30.2. Ignoring HomeVestors' objections on the subject, WBD

But WBD now seeks an extensive email review and production about everything the company discussed internally regarding its investigation. WBD wants HomeVestors to spend hundreds of thousands of dollars reviewing ▉ additional documents. Given the burden of WBD's request and lack of relevancy of these materials, the Court should deny WBD's motion to compel. Likewise, the Court should confirm that no additional depositions are required since further inquiry into the internal investigation is not relevant.

## II.     The information WBD seeks is not relevant.

*First*, HomeVestors has made clear that it is not alleging harm to its business reputation and is not seeking damages based on a claim of reputational harm. HomeVestors is asserting trademark dilution under the Lanham Act and Delaware law (6 Del. Code § 3313). While this Delaware statute includes "Injury to business reputation; dilution," it permits a party to assert trademark dilatation without alleging harm to business reputation ("[l]ikelihood of injury to business reputation *or* of dilution of the distinctive quality of a mark").[2] HomeVestors is pursuing only dilution under this statute. *See* Ex. 1, Rog. No. 17. HomeVestors has repeatedly and consistently stated that it is not alleging harm to its reputation nor is it seeking damages based on reputational harm. *Id.*, Rog. No. 19. *See Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, No. 120CV01125ELRJCF, 2021 WL 12121916, at *10 (N.D. Ga. June 25, 2021), *aff'd*, No. 1:20-CV-01125-ELR, 2023 WL 7333859 (N.D. Ga. June 22, 2023).

Accordingly, the ProPublica article and its allegations are irrelevant. WBD merely seeks to harass HomeVestors and its witnesses by seeking production of extensive internal emails (which are not relevant and mostly subject to privilege and/or work product protections) and depose HomeVestors' top executives about the details of the allegations in the ProPublica article.

WBD cites *JUUL Labs Inc. v. Chou*, No. 2:21-cv-03056-DSF-PD, 2022 WL 2165411(C.D. Cal. Feb. 11, 2022), and asserts that the case is "a factually analogous trademark case" and that the court "ordered similar discovery." Neither is correct. *JUUL* involved "counterfeit products bearing one or more of Plaintiff's registered 'JUUL' trademarks," the court had already "granted summary judgment as to liability," and the plaintiff was seeking ***statutory*** damages for use of counterfeit marks under 15 U.S.C. § 1117(c). *Id.* at *1. Notably, in this case, HomeVestors seeks only disgorgement of WBD's profits under 15 U.S.C. § 1117(a), not statutory damages. The *JUUL* court explained that "[i]n rewarding statutory damages, many courts look to the caselaw addressing 17 U.S.C. § 504(c), the analogous statute for copyright infringement." *Id.* at *9. One of the factors courts consider in addressing statutory damages in trademark cases is "the value of the trademark." *Id.* To reduce its statutory damages stemming from selling counterfeit products, defendants in the *JUUL* case sought "[i]nformation and documents related to negative views of Plaintiff's goodwill and reputation" as those were allegedly "relevant to the value of the trademark and deterrent effect upon others besides the defendant." *Id.* at *10.

---

sought to harass HomeVestors' witnesses by repeatedly asking questions that were clearly the subject of the protective order and that sought to uncover discussions and communications that are protected by attorney client privilege and work product.

[2] WBD incorrectly asserts that HomeVestors is asserting "injury to business reputation ***and*** dilution under 6 Del. Code § 3313," WBD Letter at 1 (emphasis added).

However, that analysis is not relevant to assess damages under disgorgement of profits under 15 U.S.C. § 1117(a). As the Third Circuit has explained, the factors to consider when assessing a disgorgement of the defendant's profits are "(1) whether the [infringer] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 223 (3d Cir. 2021). The value of the plaintiff's trademark is not a factor to consider. This makes sense as the focus is on the unjust gains of the defendant.

*Second*, even assuming that HomeVestors' public reputation were relevant (and it isn't), WBD ignores that reputation is public-facing. HomeVestors' internal communications regarding ProPublica or private actions taken in response are not relevant to its public image because those actions are internal and not available to the public. Internal assessment of its reputation and responses to criticism are irrelevant. *See Smith v. Wal-Mart Stores, Inc.*, 475 F. Supp. 2d 1318, 1324 (N.D. Ga. 2007) (determining that a company's "internal assessment of its reputation and responses to criticism are irrelevant" where the issue was how the public perceives the company).

### III. WBD's requests are burdensome, disproportionate, and harassing.

In addition to the lack of relevancy, WBD's requests are burdensome and disproportionate to the needs of this case. HomeVestors has already produced 10,573 documents, which span 47,664 pages. Cohen Decl. ¶ 8 (filed contemporaneously herewith). By contrast, WBD has produced only 2,724 documents. The parties already engaged in email discovery, during which HomeVestors reviewed 6,015 documents in connection with that email review and produced 1,467 documents. *Id.* ¶ 7.

HomeVestors estimates that it would have to review over ▮▮▮▮ documents to identify emails and documents responsive to RFP 93. *Id.* ¶ 15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ there would be significant privilege/work product review that would be required in connection with RFP No. 93. *Id.* ¶ 17. Given the volume of documents and the need for a substantial privilege/work product review, HomeVestors estimates that it would incur at least ▮▮▮▮ to review documents to respond to RFP No. 93, not including the creation of a privilege log. *Id.* ¶ 18.

### IV. There are complicated privilege and work product issues.

The Court should reject WBD's assertion that the information it seeks is not subject to privilege or work product. The ProPublica article ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, of the ▮▮▮▮ documents that HomeVestors would have to review to respond to RFP No. 93, over half include an attorney. *See id.* ¶ 17. And privilege principles extend to an attorneys' agents. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("[C]ourts have held that the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege."). Additionally, "[g]enerally, documents created as part of an internal investigation … are considered to be made in anticipation of litigation for the purposes of the work product doctrine." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006).

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4355)

cc: All Counsel of Record (by CM/ECF and e-mail)